IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ISHMAEL B. TAYLOR,                     :
                                       :    CIVIL ACTION NO. 07-5211
              v.                       :
                                       :
SUPERINTENDENT                         :
JOSEPH J. PIAZZA, ET AL.               :
                                       :

**SURRICK, J.**                                    **MAY 25, 2012**

<u>**MEMORANDUM**</u>

Presently before the Court are the pro se[1] application of Petitioner Ishmael B. Taylor for

a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1) and Petitioner's Objections

to the Report and Recommendation of Magistrate Judge Elizabeth Hey (ECF No. 26).  Also

before the Court is Petitioner's Motion to Appoint Counsel and Request an Evidentiary Hearing.

(ECF No. 28.)  After a *de novo* review of the record and for the reasons set forth below, the

Objections to the Report and Recommendation will be overruled and Petitioner's Petition for a

Writ of Habeas Corpus will be denied.

I.      **BACKGROUND**

On March 26, 2001, Petitioner entered a plea of guilty to aggravated assault while driving

under the influence, in violation of 75 Pa. Cons. Stat. Ann. § 3735.1, and other lesser charges

stemming from a February 2000 automobile accident.  (Comm. Resp. 1, ECF No. 8.)  On May

15, 2001, Petitioner entered pleas of guilty to several counts of forgery, conspiracy to commit

---

[1]  We subject pro se pleadings to a liberal review.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
A pro se complaint, "however inartfully pleaded," is to be held to "less stringent standards than
formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  *See also
Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

forgery, and other lesser charges related to a separate check fraud scheme.  (*Id.* at 2.)[2]  The

automobile offense is a second-degree felony and carries a maximum sentence of ten years.  75

Pa. Cons. Stat. Ann. § 3735.1(a).  Forgery is a third-degree felony and carries a maximum

sentence of seven years.  18 Pa. Cons. Stat. Ann. § 4101©.  Conspiracy is graded at the level of

the most serious offense constituting an object of the conspiracy, which in this case was a third-

degree felony.  18 Pa. Cons. Stat. Ann. § 905(a).  On May 15, 2001, Petitioner was sentenced to

---

[2]

  The Pennsylvania Superior Court outlined the facts giving rise to these charges as follows:

> The events giving rise to the . . . charges occurred between
> December 1999 and February 2000.  [Petitioner] had been the
> target of an ongoing bad check and forgery [investigation].
> [Petitioner's] role in this operation was to obtain legitimate bank
> account numbers from an individual who was working in
> Sovereign Bank.  [Petitioner] would then direct other individuals
> to take checks which were made out to the legitimate account
> numbers and had these individuals write out checks that were
> stolen or on closed accounts to bank customers with legitimate
> account numbers without their knowledge or consent.
> [Petitioner] sent his cohorts to various branches of Sovereign
> Bank to present these checks for deposit.  This scheme involved
> at least forty-eight unique transactions and netted over $28,000 in
> cash.
>
> On February 7, 2000, at approximately 2:00 p.m., [Petitioner]
> was driving his vehicle at a high rate of speed on Route 422
> bypass in the city of Reading and was attempting to flee from
> police officers from various departments who were in hot pursuit.
> He exited the bypass onto the Penn Street Bridge.  While running
> from the police toward West Reading, he jumped over the median
> and entered the exit lane from [the] westbound 422 bypass.  He
> entered onto the westbound lanes of Route 422 heading in an
>  eastbound direction.  While traveling the wrong way on Route
> 422, he drove his vehicle, head-on, into a vehicle driven by
> Shawne Fisher.  At the time, [Petitioner] was under the influence
> of cocaine.

*Commonwealth v. Taylor*, No. 1677 MDA 1001, 2-3 (Pa. Super. Ct. Oct. 2, 2002) (slip op.).

five to ten years in prison on the charge of aggravated assault while driving under the influence, and a total of four to fourteen years' imprisonment on the check fraud and conspiracy charges. (Hr'g Tr. 52, May 5, 2001.)  These sentences were to run consecutively to each other for a total term of incarceration of nine to twenty-four years.[3]  (*Id.*)

On May 23, 2001, Petitioner filed a motion to withdraw his guilty plea.  (Pet. App. 47A–48A.)  Petitioner argued that his admission of guilt was not voluntary or intelligent as he was not, prior to pleading, apprised of all of the elements of the offense of aggravated assault while driving under the influence.  (*Id.*)  Specifically Petitioner contended that a "plain reading of [75 Pa. Cons. Stat. Ann. § 3735.1] requires a DUI (driving under the influence) conviction as an element of the offense" of aggravated assault while driving under the influence and "since he was not convicted of DUI, any sentence on Aggravated Assault by Vehicle while DUI is illegal." (Pet. App. 51A.)  Petitioner also argued that the sentence ultimately imposed was contrary to a plea agreement reached between the parties prior to his entering a plea.  He pointed to a letter sent from prosecutor Patrick Barry to Petitioner's trial attorney, William Bispels, as evidence of this agreement.  (*Id*. at 50A.)  Petitioner claimed that in deciding whether or not to plead guilty, he relied upon his understanding of this letter, which he interpreted as promising "dockets 2002, 2004, 2005, and 2006/00 would run concurrent with 2003/00"[4] so that he would "receive

---

[3]

When Petitioner entered guilty pleas to the forgery and conspiracy charges, he also pled guilty to a number of lesser-related charges.  Petitioner's sentences on the minor charges ran concurrently with the sentences on the forgery and conspiracy charges.  (Hr'g Tr. 49-55, May 15, 2001.)

[4]

Dockets 2002, 2003, 2004, and 2005/00 are comprised of charges of forgery and conspiracy against Petitioner related to the check fraud scheme.  Docket 2006/00 is comprised of charges related to the February 2000 automobile accident.  (Hr'g Tr. 7-9, Mar. 26, 2001.)

concurrent sentences in all cases." (Pet. App. 50A.) Petitioner argued that because he did not receive the benefit of the bargain he believed he was entitled to, he should be allowed to withdraw his guilty plea. (*Id.*) Finally, Petitioner argued that Judge Jeffrey L. Schmehl failed to provide a contemporaneous written statement describing his reasons for deviating from the sentencing guidelines or using Petitioner's prior convictions as an "aggravating factor" when calculating the sentence. (*Id.* at 51A–53A.) Petitioner contended that Judge Schmehl's actions violated the precepts laid down by the Superior Court in *Commonwealth v. Gause,* 659 A.2d 1014 (1995), mandating such an explanation in instances of departure from the Pennsylvania Sentencing Guidelines ("Guidelines"). (Pet. App. 51A–52A.) Petitioner also contended that his sentence was improper, as Judge Schmehl "[gave] weight to the nature of the crimes only," and did not consider other factors such as Petitioner's need for rehabilitation. (*Id.* at 52A–53A.)

At the hearing on his motion, however, Petitioner conceded that no promises were made prior to his plea as to how the sentences for the automobile accident and the forgery would combine, or whether Petitioner actually would be sentenced within the Guidelines range. (Hr'g Tr. 20-21, July 25, 2001.)[5] He also acknowledged that he was aware that he was entering an

---

5

While being examined about his understanding of the contents of the letter sent from Barry to Bispels, Petitioner testified to the following:

Q:     Isn't it also true Mr. Ochs never told you that was an agreement to those being—that you would be sentenced within the guidelines?
A:     No, he never, never said that, that it was an agreement.

(*Id.*) At the same hearing, Petitioner also testified:

Q:     . . . doesn't the plea offer say, I will not make it part of the agreement that [the sentences for the automobile and forgery charges] can be consecutive, that you can argue them to be concurrent, correct?
A:     Right.

-4-

"open" guilty plea, and that he was "basically throwing [himself] on the mercy of the court."

(*Id.* at 10, 22.)  Despite these acknowledgments, Petitioner still contended it was his subjective

belief at the time that he would only receive a sentence of three to six years should he enter a

guilty plea.  (*Id.* at 12.)  Following this hearing, Judge Schmehl denied Petitioner's motion to

withdraw his plea and refused to modify the sentence.  (Pet. App. 59A.)

Petitioner appealed this decision to the Superior Court.  (*Id*. at 62A–63A.)   The Superior

Court determined that during the plea colloquy, Petitioner demonstrated sufficient understanding

of the charges and the penalties to which he was exposed by pleading guilty.  *Taylor,* No. 1677

MDA, at *4–5.[6]  The Superior Court also determined that Petitioner had failed to provide a

"concise statement of the reasons relied upon for allowance of appeal" in accordance with

Pennsylvania Rule of Appellate Procedure § 2119(f).  *Taylor,* No. 1677 MDA 1001, at *6–7.

Under *Commonwealth v. Tuladziecki,* 702 A.2d 1084, 1085 (Pa. Super. Ct. 1997), such a failure

bars appeal of the trial court's discretionary sentencing determination.  The Superior Court

---

(*Id* at 20.)

[6]

  The Superior Court stated that:

The record demonstrated that the plea colloquy conducted by the trial court fully
informed [Petitioner] of the consequences of his plea, as the dialogue between
appellant and the judge emphasized the nature of the rights [Petitioner] was waiving
by pleading guilty, as well as the maximum permissible penalties that could be
imposed.  The Commonwealth carefully presented the factual bases for the criminal
charges, and appellant acknowledged those facts as accurate.  Moreover, [Petitioner]
stated that he fully understood the charges to which he was pleading guilty, and that
he had no questions for the court regarding his plea.   Accordingly, we have no
hesitancy in ruling that the guilty plea colloquy was sufficient to support the
conclusion of the trial court that [Petitioner] entered a knowing and voluntary plea.

*Id.* at *5.

nevertheless went on to evaluate Petitioner's sentencing claim on the merits and determined that the record indicated that Judge Schmehl clearly followed the applicable rules when deviating from the guidelines. *Taylor,* No. 1677 MDA 1001, at *7. Accordingly, the Superior Court concluded that the sentence was valid. *Id.*[7]

Petitioner next filed a motion in the Pennsylvania Supreme Court requesting the right to appeal the Superior Court's decision. This request was denied on August 13, 2003. (Pet. App. 133A.) Petitioner then filed a petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541–55, on September 16, 2003. (Pet. App. 130.) Petitioner's PCRA claim was dismissed on March 3, 2005. (*Id.* at 158A, 182A.) In dismissing Petitioner's PCRA petition, the Court of Common Pleas stated that all of Petitioner's claims had previously been litigated and were therefore "not cognizable under Post Conviction Relief Act."[8] (*Id.* at 160A.) Petitioner then filed an appeal from the PCRA court's decision. The dismissal was affirmed by the Superior Court on May 30, 2006. (*Id.* at 208A.) The Pennsylvania Supreme Court denied Petitioner's requests for allowance of appeal on December 28, 2006. (*Id.* at 216A.)

---

[7]
The Superior Court quotes directly from Judge Schmehl's opinion dismissing Petitioner's motion to withdraw his guilty plea, and states that: "Were we to undertake study of appellant's sentencing claim we would find that the distinguished Judge [] Schmehl has thoroughly addressed and properly rejected this challenge to the discretionary aspects of the sentence . . . ." *Id.*

[8]
This determination was based upon 42 Pa. Cons. Stat. Ann. §§ 9544(2), which states that an issue is considered previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue . . . ." Petitioner's appointed PCRA counsel filed a "no-merit" letter with the court on January 20, 2004, noting that all of the issues raised by the Petitioner had previously been litigated. (Pet. App. 147.) The court agreed with PCRA counsel and stated that "[Petitioner's] claims have been previously litigated in the [Petitioner's] direct appeal . . . ." (*Id.* at 160A–161A.)

On November 18, 2007, Petitioner filed a petition in this Court requesting relief under the federal habeas corpus statute, 28 U.S.C. § 2254. (Pet. App. 228A.) Petitioner argued that his due process rights were violated in the following ways: (1) the trial judge failed to fully inform him of all the elements of the offenses to which he was pleading guilty; (2) the trial judge improperly departed from the Guidelines; and (3) his plea was improperly coerced due to prosecutor's failure to abide by the terms of the plea agreement. (Pet. 1-6, 7, 11.) Petitioner also claimed that his attorneys' failure to correct these problems, either at trial or on appeal, amounted to ineffective assistance of counsel. (*Id.* at 15, 18.)

The case was assigned to Magistrate Judge Elizabeth Hey for a Report and Recommendation. (ECF No. 2.) On September 26, 2008, Magistrate Judge Hey issued a Report and Recommendation ("R&R") recommending that we dismiss the habeas petition. (ECF No. 22.) In the R&R, she found the following: (1) the record indicates that Petitioner was apprised of the nature of the offense, as well as the consequences of a guilty plea, and he did not contest the facts as presented during the colloquy or present additional evidence challenging the plea's legitimacy; (2) Petitioner's plea was considered voluntary and intelligent (R&R 16); (3) the sentence imposed was in keeping with the terms of the plea agreement, and the plea colloquy dispelled any confusion about the terms of that agreement (*id.* at 18-19); (4) the sentence imposed was not above the statutory maximum for the offense, and therefore the federal courts will not review the trial judge's discretionary sentencing determination (*id.* at 21-22); (5) Petitioner's counsel during his guilty plea was not ineffective for failing to individually articulate all elements of the offenses or for failing to challenge the plea agreement as stated by the judge (*id.* at 25); and (6) Petitioner's counsel on direct appeal was not ineffective for not calling Petitioner's trial counsel to testify about his failure to include the elements of the

offenses in the record or object to the judge's articulation of the plea agreement during the colloquy (*id.* at 25-26).  Given these findings, Judge Hey recommended that the habeas petition be denied.  (*Id.*)

Petitioner filed objections to the Report and Recommendation.  (Objections, ECF No. 26.)  Petitioner articulates five objections:  (1) the Magistrate Judge failed to consider the legality of convicting an individual under § 3735.1 when that individual has not been previously convicted under 18 Pa. Cons. Stat. Ann. § 3802 (2007), (Objections 2-6);  (2) the Magistrate Judge improperly applied Supreme Court precedent, *Henderson v. Morgan,* 426 U.S. 637 (1976), in evaluating whether Petitioner's plea was knowing, voluntary, and intelligent (Objections 6–11); (3) the Magistrate Judge improperly applied Supreme Court precedent, *Santobello v. New York,* 404 U.S. 257 (1971), in evaluating the contents of the letter from Barry to Bispels (Objections 12-15); (4) the sentence imposed by Judge Schmehl violated Petitioner's right to due process because it exceeded the Pennsylvania Sentencing Guidelines (*id*. at 15-17);  and (5) the Magistrate Judge improperly applied Supreme Court precedent, *Strickland v. Washington,* 466 U.S. 668 (1984), in evaluating the prejudice resulting from counsel's "unprofessional performance" at trial and on direct appeal (Objections 18).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2254, the federal courts will only entertain a habeas petition from an individual held in state custody if the claims therein have been exhausted in state courts and the petitioner has no remaining avenue of effective redress.  28 U.S.C. § 2254(b).  Moreover, a federal court will only grant a habeas petition if the state court decision was "contrary to" or involving "an unreasonable application of" clearly established Supreme Court precedent, or if the state court made an unreasonable determination of fact based upon the proceeding.  *Id*. at §§

2254(d)(1)-(2); *see Schriro v. Landrigan,* 550 U.S. 465, 481 (2007); *Williams v. Taylor,* 529

U.S. 362, 405 (2000).  In order to justify habeas relief, a state court decision cannot simply be

different than a decision by a lower federal court; the state court holding must either contradict a

holding of the Supreme Court on a question of law, or the state court must have arrived at a

result different than the Supreme Court when faced with "materially indistinguishable facts."

*Williams*, 529 U.S. at 404-09, 412-13; *see also Fischetti v. Johnson,* 384 F.3d 140, 148-50 (3d

Cir. 2004) (acknowledging that federal appellate court decisions can be enlightening in

determining what the law is, but holding that the only legal touchstone relevant in this context is

precedent from the Supreme Court); *Outten v. Kearney,* 464 F.3d 401, 413 (3d Cir. 2006) ("In

performing this inquiry, it is not sufficient for [a petitioner] to show merely that his

interpretation of Supreme Court precedent is more plausible than the state court's; rather, [the

petitioner] must demonstrate that Supreme Court precedent requires the contrary outcome.").

 The two prongs of analysis articulated in 28 U.S.C. § 2254(b)(1) are distinct.  *See*

*Williams,* 529 U.S. at 406 (holding that to conflate the phrases "contrary to" and "unreasonable

application of," the Supreme Court would be violating the cardinal rule of statutory construction

mandating courts give meaning to every clause and word in a statute).

 The first prong articulates the test for evaluating the state court's deliberation and

subsequent determination of the correct legal principle.  *Moore v. Morton,* 225 F.3d 95, 104 (3d

Cir. 2001) (citing *Williams,* 529 U.S at 406).  Findings that are "contrary to . . . clearly

established federal law" are those determinations of legal principles by state courts that are

"diametrically different," "opposite in character," and "mutually opposed" to clearly established

precedent.  *Williams,* 529 U.S. at 405; *see also Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.

2000) (applying the deferential standard of review articulated in *Williams*); *Matteo v.*

*Superintendent SCI Albion,* 171 F.3d 877, 888, 889-90 (3d Cir. 1999) (same); *see also Outten,* 464 F.3d at 414 ("[The reviewing court] should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.").

The second prong of § 2254(d)(1) allows habeas relief in instances where the state court correctly articulates the legal principle, but applies it in an unreasonable manner to the facts of the case. *Williams,* 529 U.S. at 407 (citing *Green v. French,* 143 F.3d 865, 869-70 (4th Cir 1998)). The Court in *Williams* acknowledged that "unreasonable" is an ambiguous term but noted the distinction inherent in Congress' word choice; Congress instructed courts to grant habeas relief in instances of *unreasonable* application of federal law, not incorrect applications. *Williams,* 529 U.S. at 410–11. Therefore, in order to successfully challenge the trial court's actions under the second prong, the petitioner must not only convince the district court that the decision of the state court was wrong, but that it was "objectively unreasonable." *Id.* at 409. Improper application of a legal principle notwithstanding, a well-reasoned state court argument defending that application can prevent the federal courts from granting habeas. *Fischetti,* 430 F.3d at 149; *see also Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (holding that "unreasonable application" involves a substantially higher threshold than "incorrect" application) (quoting *Schriro,* 550 U.S. at 473).

Federal courts may also issue a writ of habeas corpus when the state court has made an unreasonable determination of fact based upon the evidence presented during the proceeding. 28 U.S.C. § 2254(d)(2); *see also Schriro,* 550 U.S. at 481. As with determination and application of relevant legal principles, however, federal courts give broad deference to fact-finding by state courts and generally refrain from fact-finding on their own. *Abu-Jamal v. Horn,* 520 F.3d 272,

-10-

282 (3d Cir. 2008) (noting that Congress has expressed a strong preference for factual

development during state court proceedings); *Washington v. Sobina,* 509 F.3d 613, 621 (3d. Cir.

2007) (citing *Thompson v. Keohane,* 516 U.S. 99, 111–12 (1995) (noting that determinations as

to "what happened," "scene-and action-setting questions," and appraisals of witness credibility

are factual issues and warrant presumption of correctness under § 2254(e))).  If the petitioner

fails to produce clear and convincing evidence of unreasonableness the federal courts presume

that factual determinations made by state courts are correct.  § 2254(e)(1); *Hummel v.

Rosemeyer,* 564 F.3d 290, 297 (2009); *see Campbell v. Vaughn,* 209 F.3d 280, 290 (3d Cir.

2000) (holding that no evidentiary hearing is required when petitioner has failed to present clear

and convincing evidence to rebut state court's factual findings).

## III.    ANALYSIS

This Court has jurisdiction to hear Petitioner's habeas claim, as he is currently in the

custody of the Pennsylvania Department of Corrections and he has exhausted his state court

remedies both on direct and collateral appeal.  Petitioner's application also satisfies the statute of

limitations since it was filed within one year of the Pennsylvania State Supreme Court's denial

of his right to appeal the lower court's PCRA decision.  28 U.S.C. §§ 2244(1)–(2).

### A.      Elements of 75 Pa. Cons. Stat. Ann. § 3735.1

Petitioner argues that when he entered his guilty plea to aggravated assault while driving

under the influence, he did not plead guilty to the requisite offense of driving under the influence

in violation of 75 Pa. Cons. Stat. Ann. § 3802.[9]  Plaintiff contends that driving under the

---
[9]

75 Pa. Cons. Stat. Ann. § 3735.1 states, in relevant part, that "[a]ny person who
negligently causes serious bodily injury to another person as the result of a violation of section
3802 and who is convicted of violating section 3802 commits a felony of the second degree
when the violation is the cause of the injury."  § 3735.1(a).  Petitioner focuses on the use of

influence is a "separate and distinct claim," and that without first being convicted under the general DUI offense, he cannot be convicted of the aggravated assault offense.  (Objections 4.) He argues that the record fails to show that he was convicted under both statutes, and for this reason, he was "illegally" convicted of aggravated assault.  (*Id.* at 3-4.)  Petitioner does not, however, claim that he is actually innocent of either charge, nor does he contest the substance of the plea hearing transcript or the facts contained therein.  Additionally, he states no relevant law supporting the position that conviction for aggravated assault while driving under the influence requires a separate conviction for general driving under the influence.[10]

Even a cursory reading of the transcript dispels Petitioner's contentions that the record fails to factually support his conviction.  "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction.  Like a verdict of a jury it is conclusive.  More is not required; the court has nothing to do but give judgment and sentence."  *Kercheval v. United States,* 274 U.S. 220, 223 (1927).  The legitimacy of a claim that

---

phrase "is convicted of violating" and argues that "convicted" implies that he must be independently convicted by a jury of a §3802 offense prior to being convicted of §3735.1. (Objections 3-4.)

[10]        Petitioner cites two cases, *McKeever v. Warden SCI-Graterford,* 486 F.3d 81 (3d Cir. 2007) and *Kendrick v. Dist. Att'y of Cnty. of Phila.*, 488 F.3d 217 (3d Cir. 2007), which he presents as authority supporting his position.  These cases address the issue of whether individuals who pled guilty under the Pennsylvania Corrupt Organizations Act were entitled to habeas relief after the Pennsylvania Supreme Court determined the conduct at issue was outside the scope of the Act.  The petitioner in both cases claimed that their conduct was not criminal. *See Kendrick,* 488 F.3d at 219; *McKeever*, 486 F.3d at 85.

Petitioner makes no claim that the conduct at issue here is not criminal. Petitioner does not dispute that he committed the act for which he was convicted, or that he pleaded guilty.  All he is claiming is that his admission and guilty plea are procedurally faulty.  Legal innocence is distinct from actual innocence.  *See Benjamin v. Wynder,* No. 07–2168, 2008 WL 243685, at *2 (E.D. Pa. Jan. 25, 2008) ("The Supreme Court has explained, in describing the showing of actual innocence necessary to overcome a procedural default in the habeas context, that actual innocence means factual innocence, not mere legal insufficiency.") (citations omitted).

the evidence fails to support a conviction depends upon "whether, after viewing all the evidence in the light most favorable to the prosecution, any rationally trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Wright v. West,* 505 U.S. 277, 284 (1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Liability for a § 3735.1 offense requires an individual negligently cause serious bodily injury to another person as a result of "a section 3802 violation . . . ."  75 Pa. Cons. Stat. Ann. § 3735.1.  An individual violates 75 Pa. Cons. Stat. Ann. § 3802 when he drives or operates a vehicle while under the influence of a drug or combination of drugs to a degree that renders him unable to safely drive.  *Id*. at § 3802(d)(2).  At his plea hearing, Petitioner acknowledged that the following facts were true and accurate:  (1) Petitioner was driving his automobile; (2) Petitioner was under the influence of cocaine while he was driving; (3) the cocaine rendered him incapable of safe driving; and (4) he struck and injured the victim while he was driving in this condition.[11]  (Hr'g Tr. 7, Mar. 26, 2001.)  The facts on the record clearly establish that Petitioner's conduct violated 75 Pa. Cons. Stat. Ann. § 3802.  No rational finder of fact could determine that the facts outlined by the prosecutor were insufficient to convict Petitioner of aggravated assault while driving under the influence, and driving under the influence.

Turning to the legal question of whether Petitioner needed to be independently convicted of § 3802 prior to his conviction for §3735.1 as Petitioner contends, driving under the influence is a lesser-included offense of aggravated assault while driving under the influence and the two

---

[11]

The relevant facts state that "[Petitioner] was [driving] on Route 422 traveling in the wrong direction . . . he hit head-on, a car driven by Shawn Fischer.  Ms. Fisher suffered serous bodily injuries as a result of this collision.  In addition, the [Petitioner] was under the influence of cocaine at the time to a degree which rendered him incapable of safe driving . . . ."  *Id.*

offenses merge when charged together. *See Commonwealth v. Schmohl,* No. 281 MDA 2008,

2009 WL 1451451, at *15 (Pa. Super. Ct. May 26, 2009) (holding in factually similar

circumstances that a § 3802 charge merges with § 3735.1 and is therefore a lesser-included

offense of DUI aggravated assault); *see also Zimmerman v. Penn. Dept. of Transp,* 759 A.2d

953, 956-57 (Pa. Commw. Ct. 2000) ("The definition of AA-DUI expressly incorporates the

commission of the offense of DUI and conviction thereof as one of its elements. . . .  DUI is

incontrovertibly a lesser-included offense of AA-DUI.  Accordingly, a person who is convicted

of both AA-DUI and DUI arising from the same criminal transaction has in actuality committed

only the greater criminal offense of AA-DUI."); *Commonwealth v. Williams,* 871 A.2d 254, 264-

66 (Pa. Super. Ct. 2005).

     This is consistent with the Supreme Court's analysis of an analogous situation.  *Rutledge*

*v. United States,* 517 U.S. 292 (1996).  When the legislature passes statutes that create two

offenses criminalizing the same conduct, the courts make a general assumption that the

legislature did not intend duplicative punishment be imposed simultaneously for individual

instances of conduct.  *Id*. at 297.[12]  In order for an individual to be convicted of two related

offenses for the same conduct, the government must show that "each provision requires proof of

a fact which the other does not." *Id.* (citing *Blockburger v. United States.,* 284 U.S. 299, 304

(1932)); *see also Whalen v. United States*, 445 U.S. 684, 691–92 (1980) (concluding that two

---

[12]     The court in *Rutledge* granted certiorari to resolve a circuit split on precisely the issue
raised by Petitioner.  In *Rutledge*, the defendant was convicted on one count of conspiracy, 21
U.S.C. § 846, as well as one count of Conducting a Criminal Enterprise, 21 U.S.C. § 848(c).
These offenses relied upon the same facts.  The Supreme Court held that conviction for both
offenses, even without additional punishment, was a violation of the defendant's rights under the
Fifth Amendment's Double Jeopardy Clause.  The remedy was to vacate the conspiracy
conviction.

punishments could not be imposed because rape and felony murder predicated on rape were the "same offense").

Petitioner's argument hinges on a myopic reading of § 3735.1.  Courts are generally bound to follow the plain meaning of a statute.  *United States v. Braverman,* 373 U.S 405, 408 (1963) (noting that there is a salutary rule that criminal statutes should not be interpreted to expand their meaning beyond their plain language, but that courts must also not interpret statutes so narrowly as to defeat their "obvious intent"); *see also Commonwealth v. Campbell*, 758 A.2d 1231 (Pa. Super. Ct. 2000).  Courts cannot interpret a statute in a way that will "produce a result demonstrably at odds with the intentions of its drafters."  *United States v. Ron Pair Enters, Inc.,* 489 U.S. 235, 243 (1989) (citations omitted).  It would not only be demonstratively at odds with the intentions of the drafters of § 3735.1 for this Court to conclude that the statute imposes upon the Pennsylvania courts a requirement that defendants be convicted of separate offenses for the same conduct, it would be at odds with the text of the Constitution itself.  Under the *Rutledge* analysis, while satisfaction of the elements of a § 3802 offense is necessary for a conviction under § 3735.1, the negligent injury element of § 3735.1 is not part of the § 3802 offense.  Section 3802 is, therefore, a lesser-included offense that merges with § 3735.1.  Under both Supreme Court and Pennsylvania Superior Court precedent, the trial court was correct in not convicting Petitioner on both counts.  Therefore, Petitioner's claim in section one of his response lacks merit.

### B.      Voluntary and Intelligent Plea

Petitioner raises a number of interrelated challenges to the validity of his guilty plea, but specifically argues that his plea was made without full understanding of the charges, and in reliance on promises made (and subsequently broken) by the prosecutor.  (*Id*. at 6, 12.)

For a plea to comply with due process, it must be made (1) voluntarily and (2) intelligently. *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A guilty plea is a waiver of numerous constitutional rights, and as such, requires that the court demonstrate utmost consideration in determining whether Petitioner has a full understanding of the direct consequences of his actions. *Jamison v. Klem,* 544 F.3d 266, 276-77 (3d Cir. 2008) (noting that by entering a valid guilty plea, an individual waives their right to a jury trial, their right to confront witnesses, and their right to be free of self-incrimination).

When prosecutorial misconduct is alleged, the court must determine first if the prosecutor breached an agreement, and then examine whether the state court's holding in opposition to this finding was an unreasonable application of *Santobello*. *Dunn,* 247 F.3d at 458. A petitioner challenging a facially voluntary guilty plea on this basis must overcome a significant hurdle, however, as "[s]olemn declarations in open court carry a strong presumption of verity." *Lesko v. Lehman,* 925 F.2d 1527, 1537 (3d Cir. 1991) (citing *Blackledge v. Allison,* 431 U.S. 63, 74-75 (1977)). A petitioner must "advance specific and credible allegations detailing the nature and circumstances of such (improper) promises or representations" in order to successfully challenge his guilty plea. *Zilich v. Reid,* 36 F.3d 317, 321 (3d Cir. 1994) (citing *Lesko,* 925 F.2d at 1537). "A collateral challenge to a guilty plea may be summarily dismissed when the petitioner's allegations of an unkept promise are inconsistent with the bulk of his conduct, and when he offers no detailed and specific facts surrounding the agreement." *Lesko,* 925 F.2d at 1537-38 (citing *Davis v. Butler,* 825 F.2d 892, 894 (5th Cir. 1987)).

A defendant pleading guilty must first receive "real notice of the true nature of the charge against him . . . ." *Smith v. O'Grady,* 312 U.S 329, 334 (1941). In order for a plea to be considered intelligent, the accused must have sufficient understanding of the charges against him

-16-

so that he can make an actual admission of guilt and understand the nature of the constitutional protections he is waiving.  *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

1.    *Challenging the Prosecutor's Actions*

Petitioner asserts that his plea was involuntary due to his reliance upon promises Petitioner alleges were made, but not honored, by the prosecution.  (Objections 12.)  Prosecutors entering into plea agreements with defendants are required to comply with the terms of those agreements.  *Santobello*, 404 U.S. at 261-62; *see also Dunn v. Colleran*, 247 F.3d 405, 457–58 (3d Cir. 2001) ("[C]ourts are compelled to scrutinize closely a promise made by the government in order to determine whether it has been performed.") (citing *United States v. Hayes*, 946 F.2d 230, 233 (3d Cir. 1991).  While individual circumstances may vary, it is a constant that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello*, 404 U.S. at 261.  Sufficiently concrete assertions of prosecutorial misrepresentation, such as specific factual allegations indicating the nature and terms of an agreement, which allow for comparison to the record, can compel the district court to grant an evidentiary hearing to explore the issue in conjunction with a habeas petition.  *Blackledge,* 431 U.S. at 76–77 (finding that allegations sufficient to avoid summary dismissal included exactly what the terms of the promise were, as well as when, where, and by whom the promise had been made, plus one witness to its communication); *see also Machibroda v. United States,* 368 U.S. 487, 495 (1962) (holding that a hearing was warranted when factual allegations in motion and response related primarily to occurrences outside the courtroom and upon which the record could cast no real light); *Fontaine v. United States,* 411 U.S. 213, 214–15 (1973) (holding that an evidentiary hearing was warranted under § 2255 when plaintiff claimed that a plea was induced by coercive police tactics

-17-

and illness accompanied with specific factual allegations relating to petitioner's hospitalization

for a heroin addiction and gunshot wound prior to plea, as well as prolonged interrogations by

police).  The allegations here, however, lack any solid foundation.

    To support his claim, Petitioner points to a letter, written by the prosecutor and addressed

to Bispels.  (Barry Letter, Pet. App. Ex. 1.)[13]  The letter describes the state's intentions with

regard to sentencing.[14]  Petitioner asserts that he had agreed to plead guilty based upon

assurances that his sentences for aggravated assault and forgery would run concurrently and that

he would receive a sentence within the Guidelines range.  (Hr'g Tr. 10, 12, July 25, 2001.)

Petitioner asserts that under his interpretation of the letter's contents, his sentence would range

from three to six years incarceration, but that he received nine to twenty-four years. (*Id.* at 11.)

The letter itself, however, expressly states that there was no agreement as to whether punishment

for the car accident would run consecutively to the punishment for the forgery conviction.[15]  This

distinguishes it from instances where the courts have granted an evidentiary hearing because this

---

[13]

    Petitioner also alludes to the motion to withdraw plea filed by Petitioner's trial attorney,
William F. Ochs, as corroboration that the sentence was not in line with Ochs's understanding of
the agreement.  Ochs writes in that motion that the ultimate sentence violated the "spirit" of this
agreement.  In the same motion, however, he states that  (1) no signed agreement was entered
into;  (2) there was an unwritten understanding reached between the parties;  (3) a component of
that understanding was that punishment stemming from the auto accident would be considered
separately from the other charges;  (4) the plea entered by Petitioner would be "open" or
otherwise at the discretion of the court.  These assertions are consistent with both the letter
presented by Petitioner, as well as the record of the sentencing hearing. (Pet. App. 29A–31A.)

[14]

    This letter had been shown to Petitioner prior to his plea.  (Hr'g Tr. 7, July 25, 2001.)

[15]

    The letter reads in relevant part:  "I [Patrick Barry, Assistant District Attorney] will not
make it part of the agreement that [the charges for forgery] & [the charges resulting from the
accident] be consecutive.  Thus, you can argue for the Forgery cases to be concurrent to the
accident." (Barry Letter.)

letter is contained in the record, Petitioner has testified as to his understanding of its contents, and this information is available to the court.

This letter expressly states that there was no agreement pertaining to whether punishment for the auto accident should run concurrently with the punishment for the forgery. (Barry Letter.) As Magistrate Judge Hey pointed out, the language of the letter implies that, at most, the prosecution was acknowledging Petitioner's ability to argue that all the offenses should run concurrently. (R&R 18-19.) Statements by the Petitioner corroborate this—at Petitioner's plea hearing, the trial judge inquired directly into Petitioner's understanding of the punishment that he faced for each of the charges and stated that he had the discretion to determine whether the sentences would run concurrently or consecutively. (Hr'g Tr. 9, March, 26, 2001.) Petitioner then acknowledged the possibility of sentences for the fraud charges running consecutively to the automobile charges, and did not argue that such was in conflict with his understanding of the agreement. (*Id.*) Later statements by Petitioner corroborate this understanding as well. During his post sentence appeal, Petitioner admitted that he understood that the letter nowhere stated that his sentences would run concurrently. (Hr'g Tr. 20, July 25, 2001.) He also admitted that he was aware of the fact that the judge had ultimate discretion as to what sentence he would receive. (*Id.* at 22.)

The mindset of Petitioner here appears to mirror that of the petitioner in *McMann v. Richardson*, 397 U.S. 759 (1970). In that case, the Supreme Court stated that the individual defendant's subjective assessment of the case against him is not a basis for claiming a plea was coerced or otherwise involuntary. *Id*. at 770-71. Petitioner in that case claimed that the existence of a coerced confession motivated him to plead guilty. He represented that, had he known the confession would not be admitted, he would have put the state to its proof. Here,

Petitioner's assertion appears to be analogous: while he was aware of the risks that an open plea presented, had he known that his sentence would be above the agreed-upon sentencing range, he would have chosen to put the state to its proof.  Unfortunately for Petitioner, this does not entitle him to relief.  *Id.*

### 2.   *Challenging the plea as not intelligently made*

Petitioner also contests the adequacy of the plea colloquy.  Petitioner claims that his guilty plea was not intelligently made because Judge Schmehl failed to ask Petitioner the specific questions enumerated in Rule 590(A) of the Pennsylvania Rules of Criminal Procedure or expressly state the statutory elements of the offense during the colloquy.  (Objections 8-9.) Failure on the part of the trial judge to expressly delineate all of the elements of a specific offense will not create a due process violation if the totality of the circumstances indicates that the defendant was aware of the nature of the charges to which he was pleading guilty.  *Lepre v. Commonwealth of Pennsylvania,* No. 07–0609, 2008 WL 2562952, at *4 (M.D. Pa. June 24, 2008); *cf. Henderson,* 426 U.S. at 647 (expressing approval for, but not adopting, the "totality of circumstances" standard while upholding the appeals court determination that defendant did not receive adequate notice at trial of the intent to cause death element of the second degree murder charge to which he offered a guilty plea, due to his below average intelligence); *Boykin,* 395 U.S. at 239 (holding that a court could not presume based upon a "silent record," that defendant had entered a voluntary and knowing plea).

In this case, even without an explicit recitation of the elements of the offense, the totality of the circumstances indicates that Petitioner was fully aware of the charges to which he pled guilty.  Judge Schmehl asked Petitioner directly whether he understood the charges against him, whether his plea was voluntary, whether he knew that he was waiving the right to a jury trial and

a presumption of innocence,[16] and whether he had adequate time to consult with his attorney. (Hr'g Tr. 4, 6, May 15, 2001.)  Petitioner responded affirmatively to these inquiries.  (*Id.*)  After a recitation of the facts, the trial judge asked Petitioner if the facts, as stated, were true and accurate.  (*Id.* at 7.)  Those facts covered each of the elements of the crimes to which he was pleading guilty.  Petitioner again replied in the affirmative. (*Id.* at 8.)  Finally, the judge informed Petitioner of the range of punishment he faced, as well as of the fact that his plea was "open" and, therefore, that the determination of the appropriate sentence was at the trial judge's discretion.  Petitioner acknowledged this as well.  (*Id.* at 9.)  Based upon the colloquy, Petitioner demonstrated an understanding of both the charges at issue as well as the rights he was giving up by pleading guilty to those charges.  *See Chacker v. Petsock,* 713 F. Supp. 775, 779 (E.D. Pa. 1989) (holding that colloquy was sufficient when judge failed to explicitly address the elements of the crimes, but nevertheless engaged in questioning about defendant's awareness of the charges and the rights he was waiving); *see also United States ex rel. Black v. Russell,* 306 F. Supp. 270, 274-75 (E.D. Pa. 1969) (denying habeas petition when defendant was not informed expressly of the elements of the offense to which he was pleading guilty by the judge, but counsel had informed him of consequences of the plea).

The only specific argument Petitioner puts forward is based upon the Pennsylvania Rules of Criminal Procedure.  Petitioner concedes (Objections 10) that a full recitation of the elements

---

[16]    One significant flaw in Petitioner's reasoning is that he claims that the reading of evidence into the record cannot suffice for findings of fact by the jury.  There is no clear support for this argument, and its basic logic fails.  By pleading guilty and agreeing that the facts as read by the prosecutor are true and accurate, Petitioner has waived his right to a jury trial on the issue. *Florida v. Nixon*, 543 U.S. 175, 188 (2004) (citing *Boykin*, 395 U.S. at 242-43) (a guilty plea is more than simply a concession of facts, it is a "stipulation that no proof by the prosecution need be advanced").  Petitioner's argument, taken to its logical conclusion, would prevent any individual from successfully pleading guilty without first being convicted.

is not needed in order to enter a guilty plea when the totality of the circumstances indicates his awareness of the charges against him.  Rather, Petitioner argues that Judge Schmehl's failure to engage in the questioning, as set forth in Pa. R. Crim. P. 590, is grounds for finding that, under the totality of the circumstances, Petitioner did not have notice of the charges to which he was entering a plea.  The Rule 590(A) questions are designed to ensure that trial judges ascertain whether a plea is voluntary and knowledgeable.  *Commonwealth v. Willis,* 369 A.2d 1189, 1190 (Pa. 1977) (citing Pa. R. Crim. P. Rule 319) (this rule was renumbered ass Rule 590, effective Jan. 1, 2000).  The relevant questions from Rule 590 are:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or nolo contendere? (2) Is there a factual basis for the plea? (3) Does the defendant understand that he or she has the right to trial by jury? (4) Does the defendant understand that he or she is presumed innocent until found guilty? (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged? (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Lepre*, 2008 WL 2562952, at *4.

On direct appeal, the Superior Court considered whether Petitioner had entered an intelligent plea, and determined that he had.  *Taylor,* No. 1667 MDA 101, at *4-5.  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see also Pulley v. Harris,* 465 U.S. 37, 41 (1984).  Petitioner makes an exclusively state law claim, and it is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68 (1991).  Since Petitioner only rests his claims on state law grounds, we need not analyze further.

### 3.    *Requesting an Evidentiary Hearing*

If a petitioner is unable to develop the factual basis for his claims before the state court, under certain limited circumstances he may be granted an evidentiary hearing to develop those facts in the federal court hearing his habeas petition.  *See Machibroda*, 368 U.S. at 496-97 (holding that, to require an evidentiary hearing, petitioner's complaint must include factual allegations involving out-of-court activity that the record can shed no real light upon).   Two elements must be satisfied in order to proceed with an evidentiary hearing.  First, the claim must rely upon a new rule of constitutional law previously unavailable and made retroactive to cases on collateral review, or a fact previously undiscoverable through exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(I).  Second, the facts underlying the claim must show, through clear and convincing evidence, that but for the error no reasonable fact finder could have found Petitioner guilty of the underlying offense.  *Id.* at § 2254(e)(2)(A)(ii).

Petitioner requests the opportunity to develop facts he claims were not previously considered. (Objections 15.)  There is no need for factual development here, since all of the facts that Petitioner is contesting are contained in the record and have been previously considered. *Schriro*, 550 U.S. at 474 (evidentiary hearings do not have to be granted when the dispute can be resolved by looking to the record); *Campbell v. Vaughn,* 209 F.3d 280, 290 (3d Cir. 2000) (holding that no hearing is required when the petitioner has not presented clear and convincing evidence to rebut the state court's factual findings). Petitioner's complaint here relies upon the same facts contested during his appeal and PCRA hearings in state court.  Specifically, the state court determined that the letter presented by Petitioner presents no foundation for his assertion that an agreement was reached between the parties with regard to how the automobile and forgery sentences would be combined.  *Taylor,* No. 1677 MDA 1001, at *5 n.1 ("[W]hile there is evidence in the record that the District Attorney made a plea offer to [Petitioner] whereby some

sentences would run concurrently, there is no evidence of record that an agreement was reached

by the parties"). Moreover, any confusion that the letter could have created was put to rest at the

sentencing hearing when the judge articulated the agreement and Petitioner assented to it. (Hr'g

Tr. 23, 24, May 15, 2001.) The determination of the factual contents of the letter was made by

the state court, and the Petitioner offers no reason to believe that there is additional evidence,

unavailable during his state court proceedings, which would support his claims here. As

Petitioner is unable to show that his claim meets the criteria of § 2254(e)(2)(A), there is no

reason to analyze the question under § 2254(e)(2)(B). Consequently, no evidentiary hearing is

needed.

### C.      Sentencing above the Guidelines

Petitioner next asserts that the trial judge inappropriately exceeded the Guidelines when

imposing his sentence, and for this reason, Petitioner's sentence should be vacated or reduced.

This claim was raised and rejected when Petitioner appealed his sentence to the Pennsylvania

Superior Court. *Taylor,* No. 1677 MDA 1001 at *6–7. Petitioner nevertheless reasserts his

claim here and argues that because the judge based his determination on illegitimate factors,

Petitioner is entitled to habeas relief. (Objections 16-17.) Specifically, he argues that the use of

"prior convictions" and "injury to the victim" are elements that are taken into consideration by

the Pennsylvania Sentencing Commission when constructing the guidelines. He contends that

departure from the Guidelines on these grounds is inappropriate. (*Id.*)

The Superior Court, while analyzing Petitioner's initial appeal, determined that he had

not complied with procedural requirements set out in the Rules of Appellate Procedure,[17] and

---

17

"An appellant who challenges the discretionary aspects of a sentence in a criminal
matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of

had thus waived his right to object on this ground.  (Pet. App. 117A–118A.)  The court

nevertheless went on to analyze his sentencing claim on the merits.  The court determined that

the trial judge had provided adequate reasoning for his decision and that there was no indication

that the trial judge had abused his discretion in deviating from the guidelines.  (*Id*. at

118A–119A.)

There are two issues to consider with regard to Petitioner's sentencing: does Petitioner's

procedural default prohibit him from challenging his sentence in a habeas corpus proceeding,

and can a district court review the discretionary aspects of his sentence. The issue of how

procedural default impacts federal court jurisdiction in habeas corpus proceedings is one which

appears to have been resolved in *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  The

*Coleman* case made explicit the rule that an individual petitioner must "demonstrate cause for

the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice."  *Id.; see

also Murray v. Carrier,* 477 U.S. 478, 496 (1986) (both cause and actual prejudice need be

demonstrated).  This encourages individual petitioners to give the state courts full opportunity to

correct constitutional errors as well as to fully develop the factual record of the case.  *Cristin v.

Brennan,* 281 F.3d 404, 410 (3d Cir. 2002).

In his reply, Petitioner has not addressed the issue of his procedural default.  Based upon

this record, however, it makes no difference.  While the issue of cause is unclear,[18] based upon

appeal with respect to the discretionary aspects of a sentence." Pa. R. App. P. 2119(f).

[18]

     Cause, under Supreme Court precedent, will "ordinarily turn on whether the prisoner
shows that some objective factor external to the defense impeded counsel's efforts to comply
with the State's procedural rule." *Cristin,* 281 F.3d at 420 (citing *Murray,* 477 U.S. at 488).
Cause can be satisfied by showing interference by the State or the existence of a factual or legal

the Superior Court's opinion, even if Petitioner had filed his sentencing challenge on time, it would have been rejected.  The court stated that the claim itself was meritless, and therefore even barring the error, the outcome would have been the same.  *Taylor,* No. 1677 MDA 1001 at *7–8.  Had Petitioner addressed the issue in his brief, he would not have been able to demonstrate actual prejudice.[19]

The forgoing notwithstanding, Judge Hey was correct in determining that federal courts are not authorized, under § 2254, to review discretionary aspects of a sentence imposed by a state court.  While the courts may review instances where the trial judge deviates above the statutorily imposed maximum sentence, in this case the sentence imposed was not above the statutory maximum.  *Commonwealth v. Yuhasz,* 923 A.2d 1111, 1118–19 (Pa. 2007).[20]

---

basis for a claim which was previously unavailable.  Ignorance or inadvertent procedural default does not satisfy "cause."  *Id.*  Prejudice on the other hand is evaluated in the context of the entire proceeding.  In all likelihood, but for the error, the outcome of the proceeding would have been different.  *United States v. Frady,* 456 U.S. 152, 169 (1982). This is distinguished from whether the failure is undesirable or erroneous.  *Id.*

[19]

Petitioner raised challenges to the judge's discretionary sentencing power both during his appeal, as well as during his post conviction hearings. The transcript from the sentencing hearing, which was incorporated in the record, contains the following statement by the trial judge: "I believe a lesser sentence would depreciate the seriousness of your conduct that day and also not properly provide retribution for the serious injuries that were suffered by the victim." (Hr'g Tr. 51, May 15, 2001.)  The court goes on to state that "[t]he reason for sentencing outside the aggravated range is the Defendant's prior criminal record, the severity of the injuries caused to the victim, the amount of money and the amount of people affected by the felony forgeries and conspiracy to commit forgeries." (*Id.* at 55.)  In addition to these statements on the record, the trial judge provided an opinion in response to Petitioner's motion to withdrawal his guilty plea, wherein he quoted from the transcript, highlighting the fact that a lesser sentence would depreciate the seriousness of the offense. (Pet. App. 54A.)  Based upon this, the Superior Court determined that the trial judge had "thoroughly addressed and properly rejected the challenge to the discretionary aspects of the sentence…" *Taylor,* No. 1677 MDA 1001 at *7.

[20]

It is not unconstitutional, under Pennsylvania's sentencing scheme, to exceed the aggravated range, based upon judicially determined facts, as long as the maximum sentence imposed does not exceed the statutory limit.  *Yuhasz,* 923 A.2d at 1118.

-26-

The Guidelines were established to provide consistency in sentencing.  *Commonwealth v. Gause,* 659 A.2d 1014, 1016 (Pa. Super. Ct. 1995).  When determining an appropriate sentence, the trial judge is instructed to balance the gravity of the offense and the safety of the public with the sentencing ranges codified by the sentencing commission.  42 Pa. Cons. Stat. Ann. § 9721(b).  In relevant part the statute states that:

> In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing under sections 2154 (relating to adoption of guidelines for sentencing) . . . the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission . . . .

*Id*.  The Guidelines limit, but do not eliminate, trial judges' discretion.  *Id*. at 1017 ("[W]hen a case is not of the norm the sentencing judge may deviate from the standard sentencing range").  Thus, the judge can deviate when the nature of the offense and/or the nature of the defendant demand it.  "As the sentencing guidelines are merely advisory, [i]f the court finds it appropriate to sentence outside the guidelines, of course it may do so as long as it places its reasons for the deviation on the record."  *Commonwealth v. Johnson* 666 A.2d 690, 693 (Pa. Super. Ct. 1995).  While failure to provide a contemporaneous written statement, as required by 42 Pa. Cons. Stat. Ann. § 9721(b), can be a reversible error, *Commonwealth v. Styles*, 812 A.2d 1277, 1278 (Pa. Super. Ct. 2002), on appeal the state courts will overturn the decision by the trial judge only in instances of "manifest abuse of discretion." *Commonwealth v. Galletta,* 864 A.2d 523, 534 (Pa. Super. Ct. 2004) ("Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion"); *Commonwealth v. Walker*, 666 A.2d 301, 306 (Pa. Super. Ct. 1995) (same); *Commonwealth v. Hollerbush*, 444 A.2d 1235, 1240 (Pa. Super. Ct. 1982) (same).

-27-

Judge Schmehl provided support for his reasoning in written form. Therefore, the decision to deviate from the guidelines comports with his statutorily granted discretion in matters of sentencing.[21] In response to Magistrate Judge Hey's Report and Recommendation, Petitioner accepts the court's reasoning, but asserts that "[t]he Honorable Judge Schmehl double counted Petitioner['s] prior record score by using it as an aggravating factor in violation of state sentencing procedures." (Objections 16 n.7.) This, Petitioner contends, is a violation of his due process rights. *Id*. The specific nature of Petitioner's argument is somewhat unclear. However, based upon his previously filed motion to withdraw his guilty plea, it appears that his claim relates to the use of prior convictions in formulating the guideline range as well as an aggravating factor cited by the judge as basis for his departure from the guidelines. (Pet. App. 31A.)

Information about a defendant's past criminal history is relevant and admissible in the context of sentencing. *Williams v. New York*, 337 U.S. 241, 246 (1949). Taking into account an individual's past convictions is essential in the court's statutorily imposed obligation to consider the danger that the individual poses to the community. *Id*. This directly affects the sentence. The maximum sentence imposed here was the statutory maximum. The minimum sentence was

---

[21]
  The Pennsylvania Superior Court found that Judge Schmehl provided a written statement describing the guidelines as well as the reasons for the court's deviation from them. Under § 2254(d)(2), this court should defer to the state court's fact finding except in situations where Petitioner presents clear and convincing evidence to the contrary. (Pet. App. 119A.) It can be noted that the record clearly shows the trial judge's reasons for deviating from the guidelines, but not that the trial judge described the guidelines themselves. Even if this court did determine that Petitioner had presented clear and convincing evidence that the trial judge had not complied with the state statutory mandate to describe, on the record, the guidelines themselves prior to deviation from them, Petitioner has not shown how this error implicates a violation of a constitutional right. Without this, the District Court is unable to grant habeas relief. *Williams*, 529 U.S. at 405.

-28-

well below one-half of the statutory maximum.  The sentence falls within the trial court's

discretion.  As such, it is beyond the scope of federal habeas review to second-guess the trial

judge's reasoning.  *See Rivera v. Goode,* 540 F. Supp. 2d 582, 601 (E.D. Pa. 2008).

### D.      Ineffective Assistance of Counsel

Petitioner's last claim is for ineffective assistance of counsel.[22]  Petitioner points to three

separate actions, each of which he claims constitute ineffective assistance of counsel sufficient to

grant his writ of habeas corpus:  (1) his attorney's failure to explicitly enter into the record all the

elements of the offense of aggravated assault while driving under the influence;  (2) his

attorney's failure to object to the terms of the plea agreement when articulated by the judge; and

(3) his appellate counsel's failure to place Petitioner's trial counsel on the stand to testify to the

above issues during appeal.[23]  (Objections 18-21; Pet. 15-18.)

In order to avoid the pitfalls of judging an individual's actions with the benefit of

hindsight, when entertaining claims of ineffective assistance of counsel, the courts will indulge a

strong presumption that an attorney's conduct falls within reasonable professional standards.

*Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The *Strickland* Court stated that the

benchmark for any such claim is that the attorney's conduct must have so undermined the

---

[22]        Petitioner claims that the attorney who represented him at trial, the attorney who
represented him on appeal, and his post conviction relief attorney were all deficient. (R&R 22.)

[23]        Petitioner challenges the effectiveness of his counsel while pursuing post conviction
relief, as well.  This claim, however, is not cognizable under habeas as the Supreme Court has
not recognized any right to counsel in the post conviction proceeding. "We have never held that
prisoners have a constitutional right to counsel when mounting collateral attacks upon their
convictions . . . and we decline to do so today.  Our cases establish that the right to appointed
counsel extends to the first appeal and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555
(1987); *Eckles v. Erickson,* No. 06–1870, 2009 WL 292585 at *4 n.8 (E.D. Pa. Feb. 5, 2009)
(citing *Cristin*, 281 F.3d at 420 ("the ineffectiveness or incompetence of counsel during Federal
or State collateral post-conviction proceedings shall not be a ground for relief in proceedings
arising under section 2254")).

functioning of the adversarial process that the outcome of trial cannot be considered fundamentally fair or reasonable.  *Id.* at 686.  The relevant issue is not whether the determinations by the trial counsel were correct, but whether they were in "the range of competence demanded of attorneys in criminal cases."  *McMann*, 397 U.S. at  771.  Moreover, Petitioner must present evidence of specific instances of conduct that fell outside the scope of reasonable professional judgment, and articulate why this conduct was prejudicial.  *Strickland,* 466 U.S. at 487; *see also Kimmelman v. Morrison,* 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").  The Third Circuit has adopted the standard for evaluating effectiveness of counsel outlined in *Strickland* and stated that "[u]nder [the Third Circuit's] decisions, a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Flamer v. Delaware,* 68 F.3d 710, 728 (3d Cir. 1995) (citing *Strickland,* 466 U.S. at 687).  The conduct must be so egregious that the attorney cannot be reasonably said to have been acting as defendant's counsel.  *Flamer,* 68 F.3d at 728.  With regards to Petitioner's counsel's impact on the guilty plea, Petitioner must show that there is a "reasonable probability that, but for the counsel's errors, [Petitioner] would not have pled guilty and would have insisted on going to trial."  *Dickerson v. Vaughn,* 90 F.3d 87, 92 (3d Cir. 1996).

Petitioner's first two claims of ineffective counsel relate to his attorney's failure to challenge the issues which Petitioner raised independently in his habeas petition, and which we have already been determined to lack merit.  It cannot be said that an attorney is acting inappropriately or outside the bounds of professional conduct when the attorney fails to raise

objections or make motions that are lacking in merit.  *Smith v. Robbins,* 528 U.S. 259, 272

(2000) (holding attorneys are under an ethical duty to refrain from raising frivolous arguments);

*United States v. Winfield*, 960 F.2d 970, 973 (11th Cir. 1992) (holding that a failure on the part

of trial counsel to raise a defense which had already lapsed under the statute of limitations could

not form the basis for a claim of ineffective assistance of counsel).  Therefore, the first two

claims of ineffective assistance of counsel were properly dismissed by the Magistrate Judge.

Petitioner's final contention also fails, but for a different reason.  Witness selection is a

strategic decision, and generally not subject to second-guessing on appeal.  *United States v.*

*Tiggett,* No. 04-734, 2009 WL 415708, at *2 (E.D. Pa. Feb. 13, 2009) (the decision as to which

issues to pursue on appeal is strategic);  *Taylor v. Horn,* 504 F.3d 416, 430 (3d Cir. 2007)

(dismissing claims of ineffective assistance of counsel based upon decisions by trial counsel not

shown to be objectively unreasonable under the first prong of *Strickland*); *Albrecht v. Horn,* 485

F.3d 103, 138 (3d Cir. 2007) (holding that appellate counsel was not ineffective for failing to

raise certain claims when those claims likely lacked merit and appellate counsel did pursue other

issues).  To overcome the presumption that a trial strategy is a sound exercise of discretion, the

petitioner must show that either (1) the sound strategy was not in fact motivating the attorney's

actions or (2) the action could never be considered part of a sound strategy.  *Thomas v. Varner,*

428 F.3d 491, 499 (3d Cir. 2005); *see also United States v. Hugh,* No. 03-829, 2009 WL 212420,

at *3 (E.D. Pa. Jan. 28, 2009)  It is the second prong of the test that is being argued here.

On appeal, Petitioner's appellate attorney presented evidence with the intention of

showing that Petitioner subjectively misunderstood the nature of the prosecution's offer when

entering his plea.  (*see* Hr'g Tr. 3-19, July 25, 2001.)  The appellate attorney chose to rely upon

the testimony of Petitioner rather than that of the trial attorney. Given that Petitioner's trial

attorney would testify about a letter which was determined to not constitute an actual agreement, and the contents of which conform to the sentence ultimately imposed, the decision to not include his testimony cannot be considered objectively unreasonable.  (Objections 21; Pet. 18.) The attorney's strategy was not successful, but there is no reason presented by Petitioner to assume that it was outside the scope of professional conduct described in *Strickland*.  Therefore, Petitioner's claim of ineffective assistance of counsel fails.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's objections to the Magistrate Judge's Report and Recommendation are overruled.  The Report and Recommendation of Magistrate Judge Hey is approved.  The Petition for Writ of Habeas Corpus is denied, and no certificate of appealability will issue.[24]

An appropriate Order follows.

**BY THE COURT:**

/**s**/ *R. Barclay Surrick*
**U.S. District Judge**

---

[24] Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As discussed above, Defendant has raised no viable claims, and no reasonable jurist could disagree with our assessment.